IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE ROSATO, | ) | CASE NO. 1:11 CV 1977 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Jamie Rosato, for disability insurance benefits.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Rosato had severe impairments consisting of cervicalgia, neck pain, shoulder pain, and knee pain.[1] The ALJ determined that Rosato's did not have an impairment or combination of impairments meeting or equaling one of the listings in Appendix 1 of the regulations.[2] The ALJ decided that Rosato had the following residual functional capacity:

---

[1] ECF # 10, Transcript ("Tr.") at 14.

[2] *Id.* at 16.

>After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift and carry 5 pounds frequently and 10 pounds occasionally. She can sit for 6 hours in an 8-hour workday, and stand and/or walk for 2 hours in an 8-hour workday. The undersigned finds that the claimant can occasional [sic] climb ramps, stairs, frequently balance, stoop, kneel, crouch and crawl, but should never climb ladders, rope or scaffolds.[3]

According to the ALJ's decision, Rosato could not perform any past relevant work.[4]

Based on the above-quoted residual functional capacity finding, the ALJ applied the medical-vocational guidelines in Appendix 2 of the regulations and found that Rosato was not under a disability.[5]

Rosato seeks reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Rosato raises three issues:

- Did the ALJ err by failing to incorporate manipulative limitations into the residual functional capacity finding?

- Did the ALJ err by failing to recognize obesity as a severe impairment or to consider obesity at step three or step four of the sequential evaluation process?

- Did the ALJ err by failing to consider migraines and depression at step three and step four of the sequential evaluation process?

---

[3] *Id.*

[4] *Id.* at 18.

[5] *Id.* at 18-19.

Following briefing in this matter, I conducted a telephonic hearing on the record.[6] The record contains a transcript of that hearing.[7]

As set forth below, I recommend that the decision to deny the application for disability insurance benefits be affirmed.

## Analysis

**1.   Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[8]

---

[6] ECF # 24.

[7] ECF # 26 (Transcript of the Oral Argument of July 16, 2012 ["7.16.12 Tr."]).

[8] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[9] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[10]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

## 2.   Step Three – Equaling a listing

If a claimant has a severe impairment or combination of impairments that equal one of the listings in Appendix 1 to Subpart P of the regulations, the claimant is disabled.[11] The listings describe impairments that the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[12] The agency will deem a claimant who meets or equals the

---

[9] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[10] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[11] *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).

[12] 20 C.F.R. § 404.1525(a).

requirements of a listed impairment conclusively disabled.[13] The claimant bears the burden of proof to show that he meets or equals the listed impairment.[14]

Each listing sets out "the objective medical and other findings needed to satisfy the criteria of that listing."[15] A claimant must satisfy all of the criteria to "meet the listing."[16]

Even if a claimant cannot demonstrate disability by meeting a listing, he may be disabled if his impairment is the medical equivalent of a listing.[17] Medical equivalent means that the impairment is "at least equal in severity and duration to the criteria of any listed impairment.[18] The claimant must demonstrate that his impairments are equivalent to a listed impairment by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment."[19]

At the hearing held in this case, counsel for Rosato identified the issue as to whether or not Rosato's impairments equaled a listing.[20] On further questioning, counsel represented

---

[13] *Rabbers*, 582 F.3d at 653.

[14] *Id.* at 652.

[15] 20 C.F.R. § 404.1525(c)(3).

[16] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

[17] 20 C.F.R. § 404.1520(a)(4)(iii).

[18] 20 C.F.R. § 404.1526(a).

[19] *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original).

[20] 7.16.12 Tr. at 12-13.

that the administrative definition of equaling is vague and can be met by evidence that a claimant's impairments equal certain selected characteristics of several listings.

> Unfortunately, the administrative definition of equaling is -- is vague, at best, and there is no real definition, other than that equaling means that it doesn't -- it doesn't meet.
>
> And the way that other -- that medical experts have routinely said that somebody equals a listing is that they have a lot of the characteristics of one of the listing of impairment, and they have some characteristics of another listing of impairment, and then you add to it that someone has obesity, and you can put all that together, they say then that they equal.[21]

To the contrary, the administrative definition of equaling is not vague. Under 20 C.F.R. § 404.1526, the claimant's impairment or impairments must equal in severity and duration criteria of any listed impairment. There is nothing in this regulation that permits an amalgamation of multiple listings and a finding based upon evidence supporting selected requirements from various listings.

Rosato's counsel eventually stated that the better argument is that additional limitations should be factored into the residual functional capacity finding at step four.[22]

Rosato did not show that her impairment or impairments equaled in severity and duration the criteria of a listed impairment, and she failed to satisfy her burden that her impairments equaled a listing at step three. As Rosato's counsel properly acknowledged, her arguments are better addressed at step four.

---

[21] *Id.* at 13-14.

[22] *Id.* at 15.

### 3. Step Four

As indicated above, Rosato's more probable argument is that substantial evidence does not support the residual functional capacity finding at step four because that finding should have included additional work-related limitations.

As an initial observation, the ALJ did adopt a residual functional capacity finding incorporating substantial limitations. He limited Rosato to sedentary work, restricted her lifting to 5 pounds frequently and 10 pounds occasionally, and found her capable of sitting 6 hours in an 8-hour day and standing or walking for 2 hours in an 8-hour day.[23] He also incorporated additional postural limitations.[24]

At the hearing, counsel for Rosato argued that the additional limitations involved reaching, handling, and fingering.[25]

Counsel for Rosato conceded that the record contains no residual functional capacity opinion from a treating doctor placing any limitations on reaching, handling, or fingering.[26] He argued that such limitations should be inferred from the fact that Rosato received epidural injections on multiple occasions.[27]

---

[23] Tr. at 16.

[24] *Id.*

[25] 7.16.12 Tr. at 3-4, 16.

[26] *Id.* at 4-5.

[27] *Id.*

The record does contain sufficient objective medical evidence supporting the ALJ's decision not to include additional limitations within the RFC for reaching, handling, and fingering.

State agency physician Dr. Andriole noted that Rosato did not have any manipulative limitations.[28] And none of Rosato's doctors assessed limitations on her ability to use her hands, neck, arms or shoulders during the relevant period. As the ALJ noted, an x-ray of Rosato's left and right hands showed no evidence of degenerative or inflammatory arthritis.[29] An examination conducted shortly before the administrative hearing revealed that Rosato's Tinel's sign and Phalen's tests were negative for carpal tunnel or cubital tunnel bilaterally.[30] A manual muscle test showed that she had normal strength in her wrist, fingers, hands, and upper extremities and normal reflexes in her biceps and triceps.[31] Although Rosato received treatment for her shoulder and neck, she generally reported that she had a 50 to 90 percent improvement in her pain.[32] The physicians conducting the pain assessment interviews concluded that Rosato was benefitting from the therapy.[33] In June 2008, Dr. Gulati reported that Rosato was not in acute distress, her neck was supple, and she had no cervical

---

[28] Tr. at 277.

[29] *Id.* at 17, citing Tr. at 375, 376.

[30] *Id.* at 427.

[31] *Id.*

[32] *Id.* at 414, 417, 419, 421, 423.

[33] *Id.* at 415, 418, 420, 422.

adenopathy.[34] He also noted that her right shoulder examination demonstrated a mildly positive impingement sign, but her peripheral joints were within functional limits.[35] Her motor strength of the upper extremities and reflexes were normal.[36] Substantial evidence exists, therefore, to support the ALJ's decision not to incorporate additional limitations for reaching, handling, or fingering.

Although Rosato briefed the issue of additional limitations for migraines and depression,[37] at the hearing her counsel represented that her position should be limited to the argument that "physical nonexertionals should have been added into the ALJ's decision."[38]

Finally, Rosato contends that the ALJ erred by failing to consider her obesity[39] in determining her RFC.[40]

As the Sixth Circuit has recently stated, SSA regulations require administrative law judges to consider the effects of obesity as part of their adjudication of a claim for benefits.[41]

---

[34] *Id.* at 426.

[35] *Id.*

[36] *Id.* at 427.

[37] ECF # 19 at 16-19.

[38] ECF # 26 at 16.

[39] Tr. at 432. Rosato's weight at the relevant time was approximately 160 pounds and her height 5 feet, 1 inch. According to the standard BMI Chart, Rosato would be considered obese. www.nhlbisupport.com/bmi.

[40] ECF # 19 at 14-15.

[41] *Reynolds*, 424 F. App'x at 416 (citation omitted).

But, where a claimant does not present evidence from a physician opining that the claimant's weight "imposed additional limitations upon her or exacerbated her other conditions," no evidence on obesity would be present that an ALJ would need to consider.[42] Indeed, as Magistrate Judge Limbert of the Court recently noted in *Penn v. Astrue*,[43] where there is, as here, no medical evidence "that [a claimant's] obesity has increased the severity of her other limitations, the record demonstrates that the ALJ sufficiently considered the plaintiff's obesity in formulating her RFC."[44]

The ALJ properly handled the matter of Rosato's obesity in formulating the RFC.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Rosato had no disability. Accordingly, I recommend that the decision of the Commissioner denying Rosato disability insurance benefits be affirmed.

Dated: August 7, 2012    s/ William H. Baughman, Jr.
                         United States Magistrate Judge

---

[42] *Id.*

[43] *Penn v. Astrue*, No. 1:10 CV 1885, 2012 WL 646057 (N.D. Ohio Feb. 28, 2012).

[44] *Id.*, at *8 (citations omitted).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[45]

---

[45] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).